11385

### STATE v. UNDERWOOD

(120 S. E., 719)

1. CRIMINAL LAW—REFUSING CONTINUANCE HELD NOT PREJUDICIAL ERROR.—Refusing a continuance of a murder trial tried in an alleged hostile atmosphere as evidenced by applause of the audience when the motion for a continuance was denied, *held* not prejudicial error, in view of the Court's rebuke of the applause.

2. CRIMINAL LAW—LETTERS TO DECEDENT IN PROSECUTION FOR HOMICIDE HELD INCOMPETENT.—In a murder prosecution, a letter written to decedent by a third person and a letter written to decedent by his wife *held* incompetent.

3. HOMICIDE—WITNESSES—TESTIMONY ON CROSS-EXAMINATION AS TO ANOTHER WITNESS' STATEMENT CONCERNING THREATS BY DEFENDANT INADMISSIBLE AND PREJUDICIAL.—In a murder prosecution, allowing witness to testify on cross-examination as to another witness' statement concerning defendant's threats to kill decedent as a contradiction of such witness, *held* incompetent and prejudicial error.

Note: On effect of misconduct of spectator during criminal trial, see notes in 12 L. R. A. (N. S.), 98, and L. R. A. 1918E, 959.

4. CRIMINAL LAW—KEEPING JURY TOGETHER UNTIL SUNDAY MORN-
ING HELD NOT ERROR.—Where the jury in a murder prosecution
announced late Saturday night that it was unable to agree, keeping
the jury together until Sunday morning *held* not error under Code
Civ. Proc. 1922, § 582.

5. HOMICIDE—STATE NOT BOUND TO PROVE MOTIVE.—A charge, in
prosecution for homicide, to the effect that the State is not bound
to prove a motive, *held* not error.

6. CRIMINAL LAW—EXCEPTION VIOLATING SUPREME COURT RULE NOT
CONSIDERED.—An exception violating Supreme Court Rule 6, re-
quiring each exception to contain a concise statement of one prop-
osition and not to be long or argumentative in form, cannot be
considered.

Before RICE, J., Greenwood, September, 1922. Re-
versed and remanded.

Clayton Underwood was convicted of murder and ap-
peals.

The additional exceptions ordered to be incorporated in
the report of this case were as follows:

Exception 5. It was error to try the defendant, Clayton
Underwood, in a prejudicial atmosphere where it was nec-
essary to charge the jury:

"If you, or any one of you twelve men, in passing on
this issue, allow yourselves to be influenced by what people
outside say about it, then such juror is not fit to sit in the
jury box, and his name should be forever stricken from the
roll of jurors, and never again should he be allowed to come
in this Court House as a juror to try any case. You are
sworn, as well as I, to do that which is right in any case.
It is not for us to say what might or might not be a man's
reputation. You do not come into Court to try a case on
reputation; you try it upon the evidence as adduced upon
the witness stand and the law as given to you by the pre-
siding Judge. When it comes to a condition in which our
juries do not do that, our whole jury system is a failure."

The error being: (a) Under the Constitution and laws
of the State of South Carolina the defendant was entitled

to a trial free from prejudice and passion, and under conditions where it was not necessary to warn the jury against what people on the outside might say about the case, and to warn them against what they might think of the reputation of the defendant or his codefendant.

Exception 7. It was error in his Honor to charge in reference to the law of manslaughter as follows:

"It must be something done to him, some act done to him, or some immediate member of his family, in his presence, such as in a man of ordinary reason, prudence, and firmness would create a high degree of heat and passion, such as, for instance, spitting in a man's face, shoving him off the sidewalk, kicking him, or some other indignity such as is calculated to make a man angry."

The error being:

(a) That his Honor limited the provocation to the defendant, or some immediate member of his family in his presence; whereas, under the facts of this case, if believed by the jury, the provocation was sufficient, whether done in the presence of the defendant or not, to have created such sudden heat and passion on the sight of the deceased as to have reduced the killing from murder to manslaughter.

(b) The provocation need not, in all instances, be something done to the defendant, personally, or to some member of his family in his presence, and the provocation in this particular case, if believed by the jury, was sufficient, upon first sight of the defendant, to have aroused the sudden heat and passion which is contemplated by law.

Exception 8. It was error in his Honor in his charge of the law of self-defense to charge the jury that the third element in this defense was "that there was no reasonably safe means of retreat," and "that the law requires the defendant to retreat if he can retreat with reasonable safety to himself."

The error being:

(a) That this usual element in the law of self-defense

had no application to this case, for the reason that the defendant was at his own home, and the Judge should have qualified his charge so as to tell the jury that it is never necessary for a man to retreat from his own home, but, on the other hand, has the right to use such force as is necessary to remove the person from his premises, or the premises where he resides, who is about to make an attack upon him, and this was especially applicable to this case, where the testimony tends to show that the said Mitchell had made an attack at a previous time upon the wife of the defendant.

Exception 9. It was error in the presiding Judge to instruct the jury that if they should return a verdict of manslaughter as to Underwood, then they must return a verdict of not guilty as to the defendant, Hughes, and in connection therewith saying to the jury: "In this case I charge the jury that, under the facts of this case, if you find Underwood guilty of manslaughter, you must find a verdict of not guilty as to Hughes."

The error being:

(a) That in so charging the jury this defendant was prejudiced, because those of the jury who desired to convict the defendant, Hughes, were, on account of the said charge, prevented from consenting to a verdict of manslaughter against this defendant.

(b) This defendant had the right to have his case tried under the law and facts applicable to it, without reference to any result it might produce in the case of the defendant, Hughes.

(c) In stating to the jury "in this case," and "under the facts of this case," if they found this defendant guilty of manslaughter, they should find the defendant, Hughes, not guilty, the presiding Judge invaded the province of the jury and charged upon the facts of the case to the prejudice of this defendant, and practically told the jury that if the defendant, Hughes, had anything whatever to do with the

killing, then it would be necessary to find this defendant guilty of murder, or acquit the defendant, Hughes.

Exception 10. It was error in the presiding Judge to charge the jury as follows:

"But after the thing is over with, I know of no law on the statute books or the Common Law that authorizes a man to seek out her seducer and kill him. In such case, if he does so, he takes the law in his own hands. In a case of that kind, where his wife has been assaulted or an attempt to assault has been made on her, if the thing had passed off and there is nothing he can do to protect her, it is not his business to seek the man and kill him. It is his business to have the man arrested and brought to the Court House and tried and if found guilty sent to the electric chair."

The error being:

(a) The presiding Judge invaded the province of the jury and charged upon the facts in violation of the Constitution.

(b) In so charging the presiding Judge nullified the charges which he had theretofore made in reference to the defense of temporary insanity and self-defense.

(c) In so charging the presiding Judge deprived this defendant of the principles of law applicable under the facts of this case to manslaughter, and practically directed the jury to find the defendant guilty of murder.

Exception 11. It was error in his Honor to refuse to charge the jury, at the request of the defendant's counsel, the rights of the defendant, where he finds that the assaulter has returned to the scene of the assault and the home of the defendant.

The error being:

(a) Under such circumstances, the defendant would have the right to assume that the deceased had come there for no proper purpose, and would have had the right to

have acted more harshly and upon less provocation under those circumstances than he otherwise would have had.

Exception 12. It was error in the presiding Judge to charge the jury to the effect that the State is not bound to prove a motive.

The error being:

(a) Under the facts of this case, motive was the decisive factor, and the jury ought not to have been allowed to assume or theorize as to the motive, without any facts to support it.

(b) After the introduction of all of the testimony, there could be no presumption of malice, and malice, if it existed, must have been found from the facts, and under the facts of this particular case motive was the controlling factor as to whether the homicide was committed with malice.

Exception 13. It was error in his honor to charge the jury in reference to malice as follows:

"It may be expressed by word of mouth, where one speaks ill toward another; his action might express malice towards him. If he goes and does something to the other that he knows will cause his death, or as a reasoning human being ought to know will cause his death, and does cause his death, then his very deed shows how he feels toward that person, if he goes and seeks out the other person with the intention and purpose to do him hurt and injury, and there the action of the man shows malice in his heart towards the other person. The law says that where one shoots another down in cold blood, without mitigation, justification, or excuse, there his action, what he does, shows what is in his heart, shows malice in his heart toward the person killed. Express malice is nearly always directed towards some particular person or persons; on the other hand, implied malice is not directed toward any particular person or persons, but toward all mankind in general. The law says that when a man does any deed which shows that he has a wicked, depraved, malignant spirit, without regard

for his social duty, and which shows that he is absolutely without any regard for the lives and safety of those around him, the law says that in that case, even though that act may not be directed toward any particular person, if death results from it, the law presumes malice from the doing of the deed.   (When we come to surgical operations that is different.)   Whenever a man goes and does that which he knows, or as a reasoning human being ought to know, will result in the death of some person, and it does result in death, then the law says that he has malice in his heart although—"

The error being:

(a) That after all of the facts are in there is no presumption of malice, but it is a question of fact for the jury to determine from all of the testimony in the case.

(b) The charge as to malice taken as a whole directs the jury to presume malice from the very fact that one person has killed another and thus destroys the provisions of law as to manslaughter and self-defense.

(c) In telling the jury when a man goes and does that which he knows, or as a reasoning human being ought to know, will result in the death of some person and does result in death, then the law says that he has malice in his heart, the presiding Judge thereby destroyed the effect of his charge as to manslaughter and as to self-defense.

(d) His Honor should have charged the jury in this connection that, after all of the testimony had been developed, there could be no presumption of malice, and that malice, like any other fact, must be proven by the State beyond a reasonable doubt.

*Messrs. Grier & Park, George Bell Timmerman* and *M. G. McDonald,* for appellant, cite: *Continuance should have been granted on account of hostile atmosphere:* 117 S. C., 76. *Evidence of character of deceased was admissible:* 30 C. J., 174; 230 S. W., 148; 71 S. W., 18; 134 Mass., 223; 83 S. W., 385; 8 N. C., 210; 90 Ala., 612; 116 S. C.,

165. *Contradictory statements to be admissible must be material:* 28 R. C. L., 220; 74 S. C., 456; 33 S. C., 582; 100 S. C., 248; 78 S. C., 537. *What is a reasonable time is for the jury:* 13 R. C. L., 790; 10 A. L. R., 462; 81 S. W., 293; 99 S. W., 561; 63 Cal., 288; 64 Ga., 453; 118 S. C., 386; 78 S. C., 95; 58 S. C., 49. *Knowledge that will reduce killing from murder to manslaughter:* 76 Mo., 681: 175 Mo., 207; 147 Mo., 39; 78 S. C., 83; 256 U. S., 336. *Right to stand one's own ground while assailed in one's own home:* 13 R. C. L., 828; 79 S. C., 144; 17 Ga., 465. *Error to charge that if the jury found Underwood guilty of manslaughter they must find verdict of not guilty as to Hughes:* 80 S. C., 175. *Judge's charge on proof of motive erroneous:* 14 R. C. L., 777. *Question of malice is for the jury when all facts and circumstances are before them:* 30 S. C., 74; 68 S. C., 304; 29 S. C., 201; 6 S. C., 185; 15 S. C., 153; 13 R. C. L., 770. *Verdict received after expiration of term and on Sunday was a nullity:* Ann. Cas. 1916-B, 1; 25 R. C. L., 1149; 3 L. R. A., 658; 35 L. Ed., 770; 167 U. S., 178; 1 Black on Judgments, Sec. 183; 43 Tex., 431.

*Mr. H. S. Blackwell, Solicitor,* for the State.

December 31, 1923.

The opinion of the Court was delivered by MR. CHIEF JUSTICE GARY.

The following statement appears in the record: .

"The defendants, Clayton Underwood and B. B. Hughes, were indicted for the killing of Oscar Mitchell and were charged in the indictment with murder. The defendants were arraigned at the September, 1922, term of the Court of General Sessions for Greenwood County, Judge H. F. Rice presided over this term of Court. The defendants entered a plea of not guilty.

"When the case was called, counsel for the defendants made a motion for the continuance of the case on the

grounds, among other things, that the defendants were not ready to come to trial, and that the defendant, B. B. Hughes, was not well. The Court overruled the motion for the continuance.

"A motion was then made for a continuance on the ground that George Bell Timmerman, one of defendants' counsel, was obliged to attend Court at his home in Lexington. This motion, after argument, was overruled.

"On the next afternoon, Mr. Grier, of counsel for the defense, made a motion for a continuance on the ground that he was engaged as counsel for Ernest Ashley, in Anderson, which case was set for trial on Thursday, and that he could not be in two places at the same time. At this point Judge Rice said in substance: 'Mr. Grier, on yesterday a motion was made to continue this case because Mr. Timmerman had to be at Lexington Court, and now a motion is made to continue because you have to be at Anderson Court. This Court here at Greenwood has got to be run, and I am going to run it.' At this point there was considerable applause in the Court room, whereupon Judge Rice admonished the spectators that he would not allow any such outbursts of applause, and thereupon Mr. Grier stated to the Court that the defendants ought not to be tried under conditions of this kind. The Judge overruled the motion for a continuance. There was no formal motion made for a continuance on the ground of prejudice. The Ashley case was tried at the same time that this case was tried.

"On the call of the case the jurors were sworn upon *voir dire,* and the jury was empaneled, and the trial of the case entered upon. The trial of the case was entered upon on Thursday afternoon and was concluded Saturday afternoon, and the jury was charged with the case. The jury announced its inability to agree late Saturday night, but the Court did not see fit to discharge the jury and kept them until Sunday morning, when, about ten o'clock, they announced that they had arrived at a verdict as to the de-

fendant, Clayton Underwood, but were unable to reach a verdict as to the defendant, B. B. Hughes. The Court received the verdict over the objection of the defendants on Sunday morning, which was to the effect that Clayton Underwood was found guilty of murder with recommendation to mercy. The Court ordered a mistrial as to the defendant, Hughes."

The defendant appealed upon numerous exceptions, the first of which is as follows:

"It was error in the presiding Judge to force the defendants to trial in an atmosphere of hostility and prejudice which was so clearly demonstrated to the Court by the attempt of the audience to applaud on the simple proposition asking for the continuance of the case.

The error being:

"(a) Under the Constitution and laws of the State of South Carolina, the defendants were entitled to a fair and impartial trial, freed from prejudice and passion, and the defendants were forced to trial in an atmosphere of prejudice and passion and were, therefore, deprived of their constitutional rights.

"(b) The homicide had been committed only a short time before the said trial, and there was no necessity to press the case to trial in an atmosphere charged with passion and prejudice."

His Honor, the presiding Judge, promptly and sternly rebuked the applause in the Court room, and there was no repetition of it afterwards.

The appellant's attorneys have failed to show prejudicial error, and this exception is overruled.

The second exception is as follows:

"It was error on the part of the presiding Judge to exclude from evidence the letter from Bernice Glenn to Oscar Mitchell of date August 2, 1922, postmarked Columbia, S. C.

The error being:

"(a) The letter was competent evidence tending to show the character of the deceased, Oscar Mitchell, and the probability of his having made the attack upon Mrs. Underwood —disclosed by her testimony.

"(b) It tended to show that the deceased, Oscar Mitchell, was a man who would in all probability be guilty of an advance of that character."

Whatever may have been the relations of Oscar Mitchell with the writer of the letter in question, it was incompetent as testimony in the case then being tried. This exception is, therefore, overruled.

The third exception is as follows:

"It was error in the presiding Judge to exclude from evidence the letter of July 21, 1922, to Oscar Mitchell from his wife, Mrs. Annie Mitchell, in that the said letter was competent testimony tending to show that the said Oscar Mitchell had practically deserted his wife and child and was not supporting them, and tended to throw light upon the character of the said Oscar Mitchell and the probability of his having made the attack which he is alleged to have made upon Mrs. Underwood."

For the reasons just stated, this exception is overruled.

The fourth exception is as follows:

"It was error on the part of the presiding Judge to allow the witness, Mrs. W. H. Hurt, to testify as follows: 'Q. One question I forgot to ask you. Were you present on the afternoon when Mary Trussell had a conversation with you and your husband? A. Yes, sir. Q. Did Mary Trussell state to you and your husband that afternoon that she was in the front room playing the phonograph when the shot was fired, and that she said to herself that Clayton had shot Oscar; and that the night before at Ware Shoals, when Oscar went to get his cap, Clayton Underwood said, "I am going to kill the son of a bitch."

Did you hear her say that?    Did she make that statement?
A. Yes, sir.'

. "The error being:

"(a) The testimony was not in reply to any material
fact to which the said Mary Trussell had testified on direct
examination.

. "(b) It was, in substance, the admission of incompetent
and hearsay testimony against the defendant, Clayton Un-
derwood, by way of contradiction of Mary Trussell, and an
effort to prove threats on the part of Underwood towards
Mitchell by hearsay testimony.

"(c) There was no issue between Mary Trussell and the
witnesses for the State as to the feeling which existed be-
tween Mitchell and Underwood on the Sunday before the
killing, and there was nothing in the testimony of Mary
Trussell which could be affected by the contradiction of
her, since she and the witnesses for the State were agreed
upon the apparent friendliness existing between Underwood
and Mitchell at the time.    Therefore, the purpose, and only
purpose, of the testimony, was to bring out a threat by way
of contradiction, to which the witness could not have testi-
fied otherwise.

"(d) This testimony was harmful to the defendant, in
that the record shows that it was urged with great force
by the State's attorneys in the argument of the case."

The record shows that the question giving rise to this
exception thus arose while Mrs. W. H. Hurt was on the
stand as a witness:

"Q. One question I forgot to ask you.    Were you present
later on that afternoon when Mary Trussell had a conver-
sation with you and your husband?    A. Yes, sir.    Q. Did
Mary Trussell state to you and your husband that afternoon
that she was in the front room playing the phonograph
when the shot was fired, and that she said to herself that
Clayton Underwood had shot Oscar, and that the night
before at Ware Shoals, when Oscar went to get his cap,

Clayton Underwood said, 'I am going to kill the son of a bitch?' Did she make that statement? A. Yes, sir.

"Mr. Grier: We object to that question on the ground that it is not in reply; Mary Trussell couldn't answer that question. We raise no objection to the laying of the foundation of it, but incompetent testimony can't come in by way of contradiction.

"Counsel for the State: If that statement was made, it would go to show that a grudge was held against Mitchell by Underwood before any attempted assault, and would show an intent to kill.

"Court: I think I will let it stand as a contradiction as far as the statement of this girl to Mrs. Hurt goes; Underwood was not present, and there is no contention that he was present. The question is whether or not the statement can go to show the child's veracity. It might go as a contradiction. I will let it stand.

"Mr. Grier: We object to the testimony, first—as to the form of the question, you can't contradict on an immaterial matter; we object on the ground that it is not competent testimony, and it is not in reply to defendant's testimony.

"Court: I overrule the objection.

"Counsel for State: The first part of the question—

"Mr. Grier: The question must stand as a whole."

This exception must be sustained for the reason that the testimony was incompetent and prejudicial to the rights of the appellant.

The sixth exception was abandoned.

The fourteenth exception is as follows:

"It was error in the presiding Judge to hold the jury until Sunday morning and to receive the verdict of the jury on Sunday morning, after the termination of Court by limitation.

"The error being: (a) The jury had announced that it was unable to agree late Saturday night, and by keeping

the jury through Saturday night and up until Sunday morning the presiding Judge forced an agreement against this defendant."

Section 582 of the Code of Civil Procedure 1922, is as follows:

"When a jury after due and thorough deliberation upon any cause return into Court without having agreed upon a verdict, the Court may state anew the evidence, or any part of it, and explain to them anew the law applicable to the case, and may send them out for further deliberation; but if they return a second time without having agreed upon a verdict, they shall not be sent out again without their own consent unless they shall ask from the Court some further explanation of the law."

There is nothing in that section showing error on the part of his Honor, the Circuit Judge. And the recent decision by this Court in the case of *State v. Simon,* 120 S. E., 230, does not sustain this exception, as the facts in the two cases are materially different.

The other exceptions will be incorporated in the report of the case.

The cases of *State v. Coleman,* 20 S. C., 441, and *State v. Edwards* (S. C.) 120 S. E., 490, show that the twelfth exception is without merit.

The thirteenth exception cannot be considered, as it is in violation of Rule 6 of the Supreme Court, which provides that—

"Each exception must contain a concise statement of one proposition of law or fact which this Court is asked to review." "The exceptions should not be long or argumentative in form."

In none of the other exceptions have the appellant's attorneys satisfied this Court that there was prejudicial error. and they are, therefore, overruled.

Reversed and remanded for a new trial.

MESSRS. JUSTICES FRASER and COTHRAN concur.

. MR. JUSTICE WATTS concurs in the result.

MR. JUSTICE MARION did not participate.