13515

STATE v. FOLK *ET AL.*

(166 S. E., 611)

*Messrs. Kearse & Kearse, Wolfe & Wolfe,* and *S. G. Mayfield,* for appellants,

*Mr. B. D. Carter, Solicitor,* for respondent, ▮▮▮▮▮▮

November 17, 1932.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The defendants were tried at the February, 1932, term of Court of General Sessions for Bamberg County, upon an indictment charging them with the murder of one J. H. Le Croy, and were convicted of manslaughter. The appeal presents two main questions, which are urged with earnestness upon this Court in argument of counsel: (1) That the trial Judge erred in refusing to direct a verdict for the defendants, Jesse C. Folk and Albert O. Folk; and (2) in failing to charge the appellants' written request with respect to the law of retreat.

The motion for a directed verdict was made upon the following ground: That there "is no reasonable testimony in this case that will warrant a verdict of conviction against either one of these defendants for any charge under the indictment."

The testimony of Mrs. Le Croy, wife of the deceased, tends to show that Le Croy, with his wife and two adopted children, lived some few miles from the Town of Denmark on a place owned by one Cooper, and that Le Croy was

engaged in farming and logging on a small scale; that on Saturday, August 22, 1931, the defendant, Jesse Folk, went to the home of Le Croy, and, not finding him there, told Mrs. Le Croy that he had for collection a past-due chattel mortgage which her husband had given to J. B. Guess, Jr., on two mules, and that he would come back later to see Le Croy about the matter; that on the following Tuesday morning W. R. Folk and Jesse Folk came to Le Croy's home and found him ill in bed; that they told him that they had come to get the mules, and he advised them that he did not have but one mule with which to finish gathering his crop, and that he did not intend to give up that one at that time, and warned the Folks to stay off the premises occupied by him; that W. R. Folk then stated to Le Croy, "We will go back to Denmark and if you have not made arrangements with little Jim Guess we will be back in an hour," to which Le Croy replied, "Whether I have made arrangements or not, stay off the place"; that between 3:00 and 4:00 o'clock in the afternoon of the same day the witness saw an automobile coming up the drive to the Le Croy house; that W. R. Folk was driving, a Negro sitting beside him, and the other defendants, Jesse and Albert, standing on the running board of the car; that a short distance from the house Jesse and Albert stepped off the running board, Jesse going behind an oak tree directly in front and Albert behind a tree to the right of the house, each having a shotgun in his hands; that W. R. Folk drove the car up to the house, stopping within a few feet of the front porch; that, as the car was approaching, the witness called her husband, who got up out of the bed and came into the living room where she was; that W. R. Folk came up on the porch, pushed open the screen door, and came into the living room, and said to Le Croy: "Boss, we want that mule, and we are not going to have any trouble," to which Le Croy made answer, "Bill, you are not going to get the mule, and we are not going to have any trouble, but you get out of my house"; that W.

R. Folk then backed out on the porch and the witness followed him and talked with him there for two or three minutes, and told him that her husband was sick and nervous and asked him to go away and not to come back inside; that Jesse Folk called from behind the oak tree where he was concealed and told witness to get the children out of the way as he did not want to hurt them; that Mrs. Le Croy went back into the house and found that her husband had gone into the bedroom and was loading his gun; that she then got hold of the children and ran out behind the garden; that a few minutes later she heard a pistol shot, and upon returning to the house found her husband lying on the floor in the living room with his feet toward the screen door and about thirty inches from it; that his shotgun, which was not cocked, was lying beside him; that W. R. Folk was still standing on the porch; and that he told Mrs. Le Croy that he had to shoot or get shot.

This testimony of Mrs. Le Croy, undisputed, not only warranted, but required, the submission of the case to the jury as to all the defendants. The three went to the home of Le Croy together. Jesse and Albert, armed with shotguns, concealed themselves behind trees in close proximity to the house, while W. R. Folk went in and fired the fatal shot. The Court committed no error in overruling the motion.

The defendants submitted a written request to charge as follows: "Where one is suddenly and violently assailed he is not required to retreat, but he may stand his ground and meet force with force in defense of his person. A person is not required to retreat when assailed and in apparent danger of losing his life or receiving serious bodily harm. He must retreat if he can do so without increasing his danger, but if by retreating his danger may be increased in all probability then he may stand his ground and do any and everything reasonably necessary to protect himself against threatened death or serious bodily harm."

It is urged that the rule or doctrine of retreat, one of the four elements included in the plea of self-defense, was vital, in its proper application, in the determination of that plea by the jury, and that therefore the failure of the trial Judge to charge the appellants' request was highly prejudicial.

An examination of the Court's charge discloses that, in instructing the jury as to the law of self-defense, he told them that, in order to make out that plea, the person who interposes it must prove four things by the greater weight of the evidence; but at no time did he mention or charge the jury with respect to the rule or doctrine of retreat, that is to say, that such person, in order to make out his plea, must show, as one of its elements, that there was no other reasonable, safe, and adequate means of escape from the necessity of taking the life of his assailant. As the charge made was more favorable to the defendants than they were entitled to under the law, they have no cause for complaint. See *State v. Cleland,* 148 S. C., 86, 145 S. E., 628.

In addition, with regard to appellants' fourteenth request, the Court said:

"I don't think there is any use in charging this about a person suddenly assaulted. Nobody is required to wait and see what the adversary intends to do. He can act on apparances. I have covered number fourteen and made it even stronger than that. I have stated not only that, but that he may act on appearances. Is there anything else?

"Mr. Wolfe: I think you have covered that."

Even if it could be shown, which is not the case, that the defendants were prejudiced by failure of the trial Judge to charge their fourteenth request, as contended, it is to be observed that counsel for appellants, when asked by the Court, indicated that they were satisfied with the instructions given.

The appeal also presents by the exceptions several other questions, but, as these were not argued, either in the brief of appellants' counsel or orally before

this Court, they may properly be regarded as abandoned. However, as the liberty of the defendants is involved, the Court has given these questions careful consideration. Upon examination, we find them to be entirely without merit.

All exceptions are overruled, and the judgment of the Circuit Court is affirmed.

MR. CHIEF JUSTICE BLEASE and MESSRS. JUSTICES CARTER and BONHAM and MR. ACTING ASSOCIATE JUSTICE W. C. COTHRAN concur.