485 S.E.2d 99

**The STATE, Respondent,**

v.

**Brad Edward WILLIAMS, Appellant.**

**No. 24609.**

Supreme Court of South Carolina.

Heard Jan. 8, 1997.

Decided April 28, 1997.

Rehearing Denied May 27, 1997.

Chief Attorney Daniel T. Stacey, of South Carolina Office of Appellate Defense, Columbia; and Ray E. Thompson, Jr., Spartanburg, for appellant.

Attorney General Charles Molony Condon, Assistant Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Robert F. Daley, Jr., Columbia; and Solicitor Holman C. Gossett, Spartanburg, for respondent.

FINNEY, Chief Justice:

Appellant was convicted of murder and received a life sentence. He raises several issues on appeal, including a claim that the State unconstitutionally intimidated a potential defense witness, causing the witness to refuse to be interviewed by appellant's counsel. We find appellant has established prejudicial error on this ground, and reverse and remand.

The State's theory was that appellant was the driver of a van from which shots were fired into a church parking lot following a heated basketball game. There is no contention appellant actually fired the shots. A coach of one of the basketball teams was the victim. The evidence tended to show that the fatal shot was fired out of the driver's window of the van, which had been rolled down, while the van cruised by slowly with its headlights off. Following the shooting, the van careened through several neighborhoods, hitting several cars, before being pulled over. The gun from which the fatal bullet was fired was never found.

Marion Lindsey was a passenger in the van. He was represented by Attorney Johnston, and had negotiated a plea agreement. Appellant's attorney learned from Johnston that Lindsey had given an oral statement to the police in which he stated that at the same time the shooter in the van was firing shots, other shots were being fired by an unknown gun man (or men) outside the van. This information would be exculpatory as to appellant since his liability for murder rested on the fatal shots being fired from the van. Further, while several witnesses heard shots being fired in the area after the game, only one other witness [1] would testify he heard the other shots fired contemporaneously with those fired from the van. Lindsey did not testify at appellant's trial.

At trial, appellant alleged that the State had unconstitutionally interfered with his due process right to establish his defense by intimidating Lindsey from speaking to appellant's counsel. See *Webb v. Texas*, 409 U.S. 95, 93 S.Ct. 351, 34 L.Ed.2d 330 (1972). The circuit court conducted an in camera hearing. At this hearing, appellant's attorney testified Attor-

---

1. Codefendant Moore, discussed infra.

ney Johnston agreed to allow appellant's attorney to interview Lindsey, conditioned on informing the solicitor's office of the meeting, which the attorney did by letter dated April 11. An investigator (McGraw) for the solicitor's office called appellant's attorney on April 13, the day before the scheduled interview, and told him "that it would be improper for me to interview Marion Lindsey and that the Solicitor's Office would not allow the interview." This statement is uncontradicted in the record since the State failed to call Investigator McGraw at the hearing.

Attorney Johnston testified that he conditioned appellant's interview of Lindsey on the "permission" of the Solicitor's Office. He testified that Assistant Solicitor Mabry spoke to him and "expressed disapproval" of the planned interview, and told Attorney Johnston it would not be in Lindsey's "best interest" to allow him to be interviewed by defense counsel. Attorney Johnston perceived from Mabry's comments that allowing the interview to go forward could jeopardize the plea offer, and communicated this "implication" to Lindsey and his mother,[2] who then declined to speak with appellant's attorney. A lawyer who was representing a third codefendant, and who had hoped to interview Lindsey along with appellant's attorney, testified and supported the testimony of appellant's attorney and Attorney Johnston.

Assistant Solicitor Mabry said that while he told Attorney Johnston that he could not tell his client not to talk to another attorney,[3] he did tell him he believed it was not in his client's "best interest" to talk to another defendant's attorney because hat attorney might "shake him up" and cause Lindsey not to cooperate and therefore lose his deal. He admitted telling Attorney Johnston that he did not want Lindsey to go through with the interview.

■■■■ The trial judge ruled that he understood "from the testimony and evidence and questions by the Court that Mr. Johnston did not in anyway feel that the State prevented this witness from being interviewed or talking with anyone else. But that it was a decision made by the two of them that it

---

2. Lindsey was a juvenile, and his plea agreement involved reduced charges in family court.

3. Attorney Johnston testified he did not recall these words being said.

would be in his best interest not to testify, but the ultimate decision [sic], or to be interviewed, but the ultimate decision of an individual as to whether or not they talk with a defense attorney or anyone else is made by them." The findings of the circuit court are binding on this Court unless unsupported by the evidence or clearly wrong, or controlled by an error of law. *State v. Thrift*, 312 S.C. 282, 440 S.E.2d 341 (1994). We agree that the evidence shows that the decision not to talk to appellant's counsel was made by Lindsey, but that finding is not dispositive of the issue raised by the appellant: whether that decision was influenced by improper governmental interference? On this point, we find the only evidence in the record shows improper interference.

▆▆▆ "Improper intimidation of a witness may violate a defendant's due process right to present his defense witnesses freely if the intimidation amounts to 'substantial government interference with a defense witness' free and unhampered choice to testify." ' *United States v. Saunders*, 943 F.2d 388, 392 (4th Cir.1991) (citations omitted). Generally, courts have found unconstitutional intimidation where the government has advised a potential defense witness that it would not be in his "best interest" to talk to the defendant or his attorney. See, e.g., *United States v. Terzado–Madruga*, 897 F.2d 1099 (11th Cir.1990)(error cured by subsequent governmental advice that witness was free to talk to defense); *United States v. Wellman*, 830 F.2d 1453 (7th Cir.1987)(while "best interest" advice susceptible of construction as veiled threat, where witness none-the-less gave statement to defense, no reversible error occurred). Where substantial interference is found, the next issue is whether the error can be deemed harmless. *United States v. Saunders, supra*. The rule in the Fourth Circuit appears to be that governmental intimidation can be deemed harmless error where the witness nonetheless testifies. Compare *United States v. Teague*, 737 F.2d 378 (4th Cir.1984)(harmless where defendant was not denied either all or the helpful part of the witness' testimony as a result of the attempted intimidation) with *United States v. MacCloskey*, 682 F.2d 468 (4th Cir.1982). Under this rule, the intimidation in this case could not be deemed harmless. We decline, however, to adopt such an automatic reversal rule and hold that in order to obtain relief, a defendant must demonstrate both substantial interference and prejudice.

■ In brief, the State essentially admits improper conduct occurred, but asserts three grounds why "the present case presents a weaker case for government overreaching" than others, and why the conduct can therefore be deemed harmless error. First, there was one witness (out of many) who testified directly that the victim was killed by a bullet fired from the van. The testimony of this single lay witness, whose testimony is unsupported by any forensic evidence, does not make this an overwhelming evidence situation. Second, the State asserts Lindsey's testimony would have been merely cumulative to that of other witnesses, his codefendants Juan Moore and Ernest Williams. Juan Moore, however, was impeached by the fact his current description of the event, including the testimony that he heard simultaneous shooting, was not consistent with his original statement. He was further impeached by evidence that his statement had changed to exonerate appellant and his codefendants only after he was incarcerated with them. We do not find Moore's impeached testimony renders the exclusion of Lindsey's harmless error. Further, contrary to the State's assertion, Williams testified that after the shots were fired from the van towards the parking lot, some shots were fired back from the lot towards the street. Obviously, Williams "after the fact" testimony cannot be equated with Lindsey's "simultaneous shooting" evidence.

Third, the State asks the Court to take judicial notice of Lindsey's testimony in the shooter's case, currently on appeal to this Court. The State alleges Lindsey's testimony in that case was consistent with codefendants Moore and William's testimony at appellant's trial that the shots were fired at the same time as the shots fired from the van. This contention bolsters appellant's claim of prejudice. As noted above Williams did not testify that there was a "simultaneous shooter," and Lindsey, unlike Moore, was not impeached. In short, we do not deem the improper intimidation harmless.

■ The remedy to be afforded a defendant in this situation is determined by the facts and circumstances of each case, depending on the prejudice suffered by the defendant. *State v. Melvin,* 326 N.C. 173, 388 S.E.2d 72 (1990). Under the circumstances here, we find the proper remedy is a reversal of appellant's conviction, and a remand for a new trial. Appellant now knows what Lindsey's testimony would

be, and can use the transcript from the shooter's case if Lindsey is unavailable to testify at appellant's retrial. Even if Lindsey does not testify, the knowledge of what his testimony would be will unquestionably aid appellant in formulating his trial strategy. See *United States v. Opager*, 589 F.2d 799, 804 (5th Cir.1979) (subsequent history omitted)("The importance to a litigant of interviewing potential witnesses is undeniable. In particular in criminal cases, where a defendant's very liberty is at stake, such interviews are especially crucial").

■ In light of our ruling on this issue, we need reach only one other claim raised by appellant. As noted above, the evidence showed that after the van left the church area, it crashed into several cars and traveled for several more miles before being stopped by police officers. Prior to this murder trial, appellant pled guilty in municipal court to leaving the scene of an accident, and received a thirty day sentence. At this trial, he moved to dismiss the murder charge alleging this prosecution was barred by double jeopardy. This argument was properly rejected by the trial judge. Double jeopardy is not implicated where, as here, the charges arise from different unlawful acts. e.g., *State v. Clarke*, 302 S.C. 423, 396 S.E.2d 827 (1990). Accordingly, this matter is

REVERSED AND REMANDED.

TOAL, MOORE, WALLER and BURNETT, JJ., concur.