12533

STATE v. CLELAND

(145 S. E., 628)

*Mr. George Warren,* for appellant.

*Solicitor Randolph Murdaugh,* for respondent,

November 30, 1928.

The opinion of the Court was delivered by MR. JUSTICE CARTER.

The defendant, W. E. Cleland, a white man, about 35 years old, resident of Hampton County, was charged in an indictment with the murder of a Negro man by the name of Ned Newton, residing on a plantation of the defendant in

Jasper County. The case was tried in the Court of General Sessions for Jasper County, June 21, 1928, and resulted in a verdict of guilty of manslaughter, whereupon the presiding Judge, his Honor, J. Henry Johnson, sentenced the defendant to imprisonment from two to four years in the state penitentiary or on the public works of Jasper County for a like period, from which sentence the defendant has appealed to this Court, upon exceptions which will be incorporated in the report of the case.

There are four exceptions, but, as stated in the agreed statement of the transcript, the main question involved in the appeal is whether or not the trial Judge committed error in failing to affirmatively charge the jury as requested by Mr. Purdy, counsel for the defendant, as follows:

"Mr. Purdy: Asks the Court to charge the law that a party on his own premises does not have to retreat, but can stand his ground."

For a better understanding of the question presented, it is well to refer to the facts in the case.

The defendant owned a plantation in Hampton County on which he resided, and also had a farm in Jasper County on which farm Ned Newton, the deceased, worked for the defendant as a sharecropper, and resided thereon. On the day Newton was shot, June 13, 1926, the defendant went to the house in which Newton was living on this farm for the purpose of seeing him on business in connection with the crops which he was cultivating for the defendant. As to what transpired when the defendant arrived at the house in which Newton was living, the facts are in dispute. The defendant and Mr. Griner, one of the young men who accompanied him, testified to one state of facts and the wife and son of Newton testified to another state of facts. But it is evident that the defendant was very much displeased with the conditions he found there, and made complaint about the lack of care of the property left in charge of Newton, and about the crop not being worked. Newton was not

at the house when the defendant first arrived, and it was contended by Newton's wife and son that the defendant cursed and struck the son before Newton arrived at the house. This, however, was denied by the defendant and Mr. Griner. It was also contended by Newton's wife and son that the defendant was drunk. This was denied by the defendant, though he admitted having taken a drink or two before he got to the house, and that, after he left the place, he drank more and became intoxicated. According to defendant's testimony Newton's wife refused to give any information concerning the affairs, and was very disrespectful to him. The defendant started to get in his automobile to go but on seeing Newton coming he waited and went across to meet him. As the two walking together approached the house, according to the testimony of Mr. Griner, the son of Newton went into the house, got a gun, and came out with it, and that he (Griner) took the gun from Newton's son. Newton's son testified that Mr. Griner went in the house and got the gun. It appears that, as soon as the negro Newton got there, he went on the porch of the house, while the defendant stood on the ground nearby. According to the testimony of the defendant, at this point Newton seized a stick, and commenced striking the defendant with the stick from the porch, and, in order to protect himself from the blows of the stick, the defendant shot Newton with a pistol, which he drew from his pocket at the time the blows were being inflicted. The wife and son of Newton testified that the defendant was the one that picked up the stick and was using it; that he was striking at Edgar, the son of Newton, and on the second effort to strike Edgar an attachment on the stick flew off and struck Newton's baby, which was in the arms of Ella, the wife, who was also on the porch, and that Newton seized the stick in the hands of the defendant, and as he did so, the defendant shot him; that Newton did not strike, or attempt to strike, any one. It clearly appears from the testimony

of both sides that, at the time the shot was fired, Newton was standing on the porch of the house in which he was living, and the defendant was standing on the ground near by the porch. When the defendant and the two young men with him, Griner and Thomas, drove away, they took with them the stick in question and the gun Griner claimed to have taken from the son of Newton.

In view of this state of facts, was it prejudicial error on the part of his Honor, the presiding Judge, in failing to affirmatively charge the jury as requested by Mr. Purdy, as follows: "Mr. Purdy: Asks the Court to charge the law that a party on his own premises does not have to retreat, but can stand his ground?"

It is a recognized principle of law that a party on his own premises does not have to retreat, and there is no question that the defendant had the right to go upon the place in question for the purpose he claimed he went there. The deceased was a laborer for the defendant, working on the farm in question as a sharecropper, and the defendant, as the owner of the farm, had the right to go upon the same whenever he saw fit. The fact that the deceased was cultivating this farm as a sharecropper for the defendant in no way deprived the defendant of his right of entry and his right to stand his ground thereon. But, as to the house in which the deceased was living, the law is different. This house was the home of the deceased and his family; it was his castle, his place of refuge, where he had a right to go when seeking a place of safety and, under our view, the defendant did not have the right to pursue the deceased into this house, or on the porch, which was a part of the house. Under our view, it might reasonably be inferred from the fact that the defendant was standing on the ground at the edge of the porch when he fired the fatal shot into the deceased standing on the porch, when considered in connection with the other facts testified to, that the defendant sought the deceased in his castle, and at the time the de-

fendant was not in danger of receiving bodily injury. Whether or not the jury would draw this inference from the evidence is not for this Court to say, but such an inference could reasonably be drawn. Therefore the request to charge, without modification, was not applicable to the facts of the case, and the presiding Judge very properly did not charge the same.

However, while his Honor did not affirmatively charge defendant's request, the defendant indirectly received the benefit of such request, in that his Honor charged the jury that in order to establish the plea of self-defense, the defendant in this case was only required to establish three things, namely: (1) That he was without fault in bringing on the difficulty: (2) that, at the time the fatal shot was fired, he believed he was in imminent danger of losing his life or suffering serious bodily harm, and that it was necessary to act as he did to protect himself from losing his life or of suffering serious bodily harm; and (3) that a man of ordinary firmness, prudence, and courage would have reached the same conclusion, as he did. His Honor, as he stated to the jury, in this case, left out the fourth element; namely, that there was no apparent safe means of escape by retreating.

Under our view of the case, his Honor's charge was more favorable to the defendant than he was entitled to.

The exceptions are therefore overruled, and it is the judgment of this Court that the judgment of the lower Court be, and is hereby, affirmed.

Mr. Chief Justice Watts, and Messrs. Justices Cothran, Blease, and Stabler concur.