13039

STATE v. THOMAS

(156 S. E., 169)

*Messrs. Blythe & Bonham* and *H. C. Miller,* for appellant,

*Messrs. L. W. Harris, Solicitor,* and *T. Frank Watkins,* for respondent,

December 13, 1930.

The opinion of the Court was delivered by MR. JUSTICE STABLER.

The defendant, James R. Thomas, a resident of Honea Path, was charged with poisoning and drowning one Maxie Thomas. The deceased, at the time of his death, was about fifteen years of age. When only three months old, he was taken into the home of the defendant, his reputed father, with whom he lived thereafter until his death. It appears that Thomas was fond of fishing, and often took Maxie with him on his trips. On the morning of July 30, 1929, they went together to the Saluda river, about four or five miles from Honea Path, in a Ford automobile driven by Maxie, to visit the fishing lines which they had set the afternoon before. Some time later in the morning, between 9

and 10 o'clock, the defendant gave out the alarm that Maxie had fallen into the river and had been drowned. Subsequently, the stomach of the dead boy was removed and sent to Clemson College for analysis. The chemist who made the analysis testified at the inquest that he had found strychnine and brucine in the stomach, and that these were poisonous drugs and would kill if taken in sufficient quantities. The defendant was afterward indicted and tried for murder; the theory of the State being that Thomas administered the strychnine to the boy, and that, when it began to take effect, he threw him into the river, and that he died as a result of the concurring effects of the poison and strangulation by water. At the conclusion of the State's case, the defendant moved for a directed verdict of not guilty, on the ground that the *corpus delicti* had not been proved. This motion was overruled, and he was found guilty of murder, with recommendation to the mercy of the Court. The case now comes here on appeal.

We shall not discuss the numerous exceptions *seriatim.* The questions they raise may be thus stated: (1) Error in refusing to direct a verdict of not guilty; (2) error in the admission of evidence; (3) error in the exclusion of evidence; (4) error in denying to the defendant the right to inspect the chemist's report. These we shall consider in order.

I. Did the Court err in overruling defendant's motion for a directed verdict? "The *corpus delicti,* in a case of murder, consists of two elements—the death of a human being, and the criminal act of another in causing that death" (*State v. Martin,* 47 S. C., 67, 25 S. E., 113, 115); and, in order to authorize a conviction, the State must prove these elements beyond a reasonable doubt, which may be done by circumstantial evidence (*State v. Gillis,* 73 S. C., 318, 53 S. E., 487, 5 L. R. A. (N. S.), 571, 114 Am. St. Rep., 95, 6 Ann. Cas., 993). But, if there is no proof of the *corpus delicti,* the defendant is entitled as a

matter of law, to a directed verdict. *State v. Brown,* 103 S. C., 437, 88 S. E., 21, L. R. A., 1916-D, 1295.

Under the view taken by the Court, that there must be a new trial, we do not deem it proper to discuss the testimony. It is sufficient to say that we have carefully read the record, consisting of more than seven hundred typewritten pages, and find some evidence in proof of the facts that form the basis of the *corpus delicti* which warranted the trial Judge in refusing the motion for a directed verdict. The sufficiency of the evidence was a question for the jury under proper instructions from the Court. *State v. Brown, supra.* This assignment of error must therefore be overruled.

II. Was there error in the admission of testimony? The Court permitted the State to introduce in evidence, for the purpose of proving motive on the part of the defendant, certain applications for insurance—with the defendant as beneficiary—upon the life of the deceased, some of which had been accepted by the insurance companies and policies issued thereon, while others had been declined.

The defendant objected to the admission of these applications on the ground that they were not the best evidence and were irrelevant, contending that, in so far as the insurance was concerned, motive could be established only by competent evidence of a valid contract of insurance in force on the life of the boy at the time of his death and payable to the defendant in case of his death—that certainly those applications which had been declined by the insurance companies, and upon which no insurance had been issued, were clearly irrelevant, and their introduction in evidence tended to prejudice the defendant's case.

"The rule that evidence tending to show motive or absence of motive on the part of accused is relevant and admissible, and that a wide latitude in the admission of this kind of evidence is permissible, are particularly applicable * * * in cases of circumstantial evidence, motive

being a circumstance bearing on the identity of the accused as the perpetrator of the crime." 16 C. J., 547.

The fact that the defendant was carrying heavy insurance on the life of the deceased was clearly relevant on the question of motive. As to the competency of the evidence offered to prove that fact: The defendant himself, on direct examination, testified that at the time of the boy's death he was carrying insurance upon the life of the deceased, with himself as beneficiary, amounting to more than $20,000 in case death should result from accident or violence. If the introduction of the applications on which this insurance was issued was error, it was cured by this testimony. As to the applications which were refused and on which no policies were issued, we think they were admissible as bearing on defendant's motive sought to be shown, in that they tended to show that he tried to obtain an even greater amount of insurance on the life of the deceased than that which he actually procured.

When D. L. Stalcup, a witness for the State, was on the stand, he testified that he was overseer of the spinning department of the Chiquola Manufacturing Company, and that for some months prior to the death of Maxie both the deceased and the defendant worked in the mill, but irregularly. Counsel for the defendant suggested to the Court that they did not see the relevancy of this testimony, as the defendant was not on trial for vagrancy. Even if counsel's suggestion should be regarded as an objection to the testimony, it does not appear that the Court made any ruling, and no question is presented to this Court for consideration. Moreover, we cannot see how the defendant was prejudiced in any way by the testimony.

On cross-examination of the defendant, the solicitor asked him what the premiums on the insurance he carried on Maxie's life amounted to yearly, and he replied, "Three hundred and something dollars a year." He

was then asked whether he had not given one Will Hayes
a bad check that he had been unable to pay, the object of
the question being, as stated by the solicitor, to show that
the defendant had no money at that time with which to pay
the premiums on the heavy insurance he was carrying on
Maxie's life. This was objected to by the defendant. The
Court made no ruling on the objection, but stated to the
solicitor that he could get the information sought without
putting the question in that form. The matter of the check
was not referred to again, but the defendant was then ques-
tioned as to money it was claimed that he had been owing
for months and was unable to pay. This was also objected to
by the defense. The Court then ruled that the defendant
should answer, without going into details, whether he was
unable to pay his debts or not at the time referred to, and
he testified that he could have paid them. He was also asked
whether he did not owe for several months a grocery bill
which he was unable to pay, to which he replied that he
could have paid it. It does not appear that there was any ob-
jection to this last question, to which the defense now ex-
cepts.

We do not think there was error as complained of. With
regard to the check, the question was withdrawn without a
ruling by the Court. With respect to the examination as
to defendant's indebtedness and his inability to pay, we do
not think the Court's ruling was prejudicial. The defendant
himself, in response to the question asked, stated that he
could have paid his debts. But, even if it had appeared other-
wise, the testimony was competent. His inability to pay his
debts might have had a bearing on his purpose in taking
out insurance on the life of the deceased in an amount so
great that he would evidently be unable to keep up payment
of the premiums.

J. D. Beacham, a witness for the State, testified that
he knew of the defendant's whipping Maxie a num-
ber of times, although he was unable to say just

how many or when; but that he remembered one Sunday morning in particular that he whipped him with a strap or board. Counsel for the defendant interposed with what may be liberally construed as a general objection to the admission of this testimony on the ground of irrelevancy. The objection did not set forth the specific grounds contained in the exception, and these grounds, therefore, cannot be considered.

III. Was there error in the exclusion of testimony? By Exception 22, the appellant complains that the Court committed error in not allowing him to testify as to statements made by the insurance agents in the conversations he had with them at the time he made the application for insurance on the life of the deceased; these agents themselves having testified as State's witnesses with regard to statements made by the defendant in these same conversations. This exception must be sustained.

"Where a part of a conversation is put in evidence, the adverse party is entitled to prove the remainder of the conversation, particularly in so far as it modifies or explains the part admitted. All statements made in a conversation, in relation to the same subject or matter, are to be supposed to have been intended to explain or qualify each other, and, therefore the plainest principles of justice requires that if one of the statements is to be used against the party, all the other statements tending to explain it or to qualify this use should be shown and considered in connection with it." 10 R. C. L., 935.

For a recognition of this rule, see *State v. Covington*, 2 Bailey, 569; *State v. Jacobs*, 28 S. C., 29, 4 S. E., 799; *Dantzler v. Railway Co.*, 152 S. C., 287, 149 S. E., 750.

The theory of the State was that the defendant, in order to benefit himself financially, procured on the life of the deceased a very large amount of insurance and then killed him. The agents, to whom the defendant had made applications for the insurance, testified for the State with regard to

statements made by him in conversations they had with him leading up to the signing of the applications. It was sought by this testimony to show that the defendant was eager to secure the insurance, as bearing on the issue of motive. This issue was an important one, and, the conversations having been gone into by the State, it was plainly the defendant's right, in reply, to testify to statements made by the insurance agents in these same conversations, and as part of same, and to deny him that right was highly prejudicial.

The defendant also complains of error on the part of the Circuit Judge in refusing to allow his witnesses to testify that the deceased, Maxie Thomas, had told them that he could not swim. The contention of the appellant is that, as this was the only way this important fact could be proved, Maxie being dead, the testimony should have been admitted. The evidence was clearly hearsay, and for that reason the Court properly excluded it. However, even if it should be thought that the Court committed error, it was not prejudicial to the defendant, as there was other testimony, uncontradicted, that Maxie could not swim.

IV. Was there error in denying to the defendant the use of the chemist's report? The record shows that B. F. Robertson, chemist at Clemson College, made an analysis of the stomach of the deceased (Section 186, Code of Criminal Procedure 1922), and filed his report with the coroner, as provided by the statute. When he was on the stand, as a witness for the State, he testified that a part of the report consisted of opinions of authorities cited in support of results arrived at. The solicitor introduced in evidence the portion of the report showing the results obtained from the analysis, but not the part containing the opinions of the authorities cited. On cross-examination of the witness, counsel for the defendant asked to be allowed to inspect and to use, if they so desired, that portion of the report not introduced in evidence. To this the solicitor ob-

jected. The Court ruled that the portion of the report containing the opinions of authorities, which at the time was in the hands of the witness testifying, was his own personal property, and that he would not be required to turn it over to counsel for the defendant.

The appellant contends that this was error, for the reason that the report was the most vital document in the case, that it presented the conclusions of the chemist from his analysis, the methods employed in arriving at such conclusions, and the authorities quoted from to "vindicate same," and that, as the State had introduced in evidence and read to the jury a part of the report, the defendant, as a matter of legal right, should have been allowed to inspect the balance of the report and to introduce it in evidence.

We think this position is meritorious. The chemist testified that what he had filed with the coroner, of which the solicitor had a copy, was the whole report, which included the results of his analysis and the excerpts from opinions of authorities supporting his conclusions. No one better than the witness himself, who made the analysis, knew what he intended to constitute his report, and he testified that it was made up of these two parts. It was therefore, clearly prejudicial to the defendant not to be allowed to examine, inspect, and use the entire report; a part of it having been introduced in evidence by the State. 10 R. C. L., 1088.

In addition, as we have already pointed out, the chemist of Clemson College is required by law to make analyses of this kind, and to report the results fully to the coroner or acting coroner. Such report thus becomes a part of the coroner's records in the case, and is a public record. No good reason has been advanced why the defendant or his counsel should not be allowed to inspect and to use such a record which might affect his case. Certainly, where the State itself has used a part of the report by introducing it in evidence, the defendant should not be denied the right to

use the whole of it. For these reasons, this exception must be sustained.

The judgment of the Circuit Court is reversed, and the case remanded for a new trial.

MESSRS. JUSTICES COTHRAN, BLEASE and CARTER and MR. ACTING ASSOCIATE JUSTICE MENDEL L. SMITH concur.