23470

The STATE, Respondent v. Warren Douglas MANNING, Appellant.

(409 S.E. (2d) 372)

Supreme Court

*Chief Atty. David I. Bruck, Asst. Appellate Defender Daniel T. Stacey,* both of the *South Carolina Office of Appellate Defense,* Columbia, *Public Defender A. Lafon Legette, Jr.,* Latta, and *Michael Steigner,* Camden, *for appellant.*

*Attorney Gen. T. Travis Medlock, Asst. Attys. Gen. Harold M. Coombs, Jr., Norman Mark Rapoport,* Columbia, *Sol. C. Gordon McBride,* Hartsville, and *Sol. James C. Anders,* Columbia, *for respondent.*

Heard June 11, 1991; Decided Sept. 9, 1991.

Rehearing Denied Oct. 8, 1991.

GREGORY, Chief Justice:

Appellant was convicted and sentenced to death for the murder of State Trooper George Radford. We reverse and remand for a new trial.

The State presented the following evidence at trial. At approximately 10:40 p.m. on October 29, 1988, Trooper Radford stopped appellant on Highway 34 in Dillon County for a defective headlight. Appellant pulled his car into the McInnis family's driveway. After writing appellant a warning ticket, Trooper Radford was advised by his dispatcher that appellant was driving under suspension. Appellant asked Mr. McInnis if he could leave his car. He then drove off with Trooper Radford in the patrol car. The dispatcher's recording tape indicates the information regarding appellant's driver's license was relayed at 10:44 p.m. followed by other communications. The last word from Trooper Radford to his dispatcher was "help." It was recorded at 11:12 p.m. Evidence indicates appellant picked up his car from the McInnises' driveway at around midnight that night.

Trooper Radford's patrol car was spotted early the next morning half-submerged in Reedy Creek Pond, about six and one-half miles from the McInnis residence. He had been shot twice through the head with his own revolver and severely pistol-whipped. The State's forensic expert testified the victim had been shot and beaten while sitting in the driver's seat of his patrol car. The trooper's summons book was found at the scene. The last summons written was to appellant for a defective headlight.

A search was conducted at appellant's residence. Trooper Radford's revolver was found in a tobacco barn about seventy-five yards behind the house. It was hanging in a corner of the barn suspended by vines growing through a hole in the wall. No blood or fingerprints linking appellant to the crime were found. Ashes taken from a heater in the home indicated some clothing had been burned and a .25 caliber pistol identified as appellant's was found. Evidence indicated appellant had this pistol with him on the night he was stopped by Trooper Radford.

The State's theory of the case was that appellant used his .25 caliber pistol to threaten Trooper Radford after he decided to take appellant in for driving under suspension. The Solicitor argued appellant forced the trooper to drive to Reedy Creek Pond where appellant murdered him and attempted to submerge the patrol car. Appellant testified on his own behalf that after he and Trooper Radford left in the patrol car from the McInnis residence, the trooper stopped another car traveling in front of them after a bag was thrown from its window. There were four people in the car. Trooper Radford approached the vehicle and while he was talking with the driver, appellant fled from the patrol car unobserved. He went to a friend's house and was driven back to his car.[1]

The sole issue we address is appellant's due process challenge to the trial judge's charge on reasonable doubt. We find the charge, taken in its entirety, constitutionally insufficient.

After the close of evidence at the guilt phase of trial, the trial judge gave the following charge on reasonable doubt:

> Beyond a reasonable doubt, in telling you that that is the degree of proof by which the State must prove, that phrase means exactly what it states in the English language, and *that is a doubt for which you can give a real reason.* That excludes a whimsical doubt, fanciful doubt. You could doubt any proposition if you wanted to. *A reasonable doubt is a substantial doubt for which honest people, such as you, when searching for the truth can give a real reason.* So it's to that degree of proof that the State is required to establish the elements of a charge.

Later in his charge, the trial judge returned to an explanation of reasonable doubt:

> Sometimes during a charge, and I might have used it, the phrase moral certainty might be used. There is no different degree of proof required. *Moral certainty and beyond a reasonable doubt are the same thing in the eyes of the law.* It might be a different way of stating the same proposition. *Either of those two phrases, moral certainty,*

---

[1] Contrary to this testimony, appellant gave a statement to police indicating Trooper Radford let him go after writing the warning ticket.

*beyond a reasonable doubt, connote[s] a degree of proof which is distinguished from an absolute certainty.*

■ The Due Process Clause of the Fourteenth Amendment "safeguard[s] against dilution of the principle that guilt is to be established by probative evidence and beyond a reasonable doubt." *Taylor v. Kentucky*, 436 U.S. 478, 98 S. Ct. 1930, 1935, 56 L. Ed. (2d) 468 (1978). An instruction is defective if a reasonable juror could interpret it to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause. *Cage v. Louisiana*, — U.S. —, 111 S. Ct. 328, 112 L. Ed. (2d) 339 (1990). Such an instruction "could mislead the jury into finding no reasonable doubt when in fact there was some." *Holland v. United States*, 348 U.S. 121, 75 S. Ct. 127, 138, 99 L. Ed. 150 (1954).

■ Applying these basic principles to the charge given in this case, we first focus on the trial judge's reference to "moral certainty" in defining reasonable doubt. The United States Supreme Court has recently disapproved a standard of moral rather than evidentiary certainty in determining an accused's guilt or innocence. *Cage v. Louisiana*, 111 S. Ct. at 330. Such a charge is misleading in that it allows a juror to base a finding of guilt upon a subjective feeling rather than upon an evaluation of the evidence. *See United States v. Drake*, 673 F. (2d) 15 (1st Cir. 1982). The use of a moral certainty standard rises to the level of a constitutional violation when it is combined with other terms in the judge's charge which "suggest a higher degree of doubt than is required for acquittal under the reasonable doubt standard." *Cage v. Louisiana*, 111 S. Ct. at 329-30.

In addition to the moral certainty charge in this case, the trial judge twice defined reasonable doubt as "a doubt for which you can give a real reason." While this definition may not suggest a higher degree of doubt in itself, we must examine it in the context of the charge given as a whole, including the following instruction regarding circumstantial evidence:

I would instruct you to seek some reasonable explanation of the circumstances proven other than the guilt of the Defendant and if such a reasonable explanation can be found you would find the Defendant not guilty. . . .

This charge deviates from the circumstantial evidence charge cited in *State v. Edwards*, 298 S.C. 272, 379 S.E. (2d) 888 (1989), that requires the evidence "point conclusively to the guilt of the accused to the exclusion of every other reasonable hypothesis." In deviating from the *Edwards* charge, the charge given in this case turns the State's burden of proof on its head by requiring the jury find a "reasonable explanation" of the evidence inconsistent with appellant's guilt before it can find him not guilty. In conjunction with the further requirement in the charge that a jury must "give a real reason" in order to have a reasonable doubt, we find the charge as a whole suggests a higher degree of doubt than that required for acquittal. Rather than conveying to the jury the principle that the State must affirmatively establish appellant's guilt by probative evidence beyond a reasonable doubt, this charge could mislead a reasonable juror to focus exclusively on appellant's explanation of the evidence to determine the existence of reasonable doubt.

In conclusion, we find the defective aspects of the trial judge's charge on reasonable doubt rendered it so confusing that a reasonable juror could have interpreted the charge as a whole to allow a finding of guilt based on a degree of proof below that required by the Due Process Clause. In so holding, we are aware of the difficulty of defining reasonable doubt to a jury. We conclude the term "reasonable doubt" may be best understood when the jury is simply instructed to give it its plain and ordinary meaning. *See United States v. Moss*, 756 F. (2d) 329 (4th Cir. 1985). In an abundance of caution, we suggest the trial bench give no further definition than that approved by the United States Supreme Court in *Holland:*

> A reasonable doubt is the kind of doubt that would cause a reasonable person to hesitate to act.

Reversed and remanded.

HARWELL, CHANDLER, FINNEY and TOAL, JJ., concur.