508 S.E.2d 857

**The STATE, Respondent,**

v.

**Scott A. NEEDS, Appellant.**

**No. 24856.**

Supreme Court of South Carolina.

Heard Sept. 22, 1998.

Decided Nov. 23, 1998.

Rehearing Denied Jan. 6, 1999.

Assistant Appellate Defender Robert M. Dudek of the South Carolina Office of Appellate Defense, Columbia, and Joseph C. Smithdeal of Greenwood, for appellant.

Attorney General Charles M. Condon, Deputy Attorney General Donald J. Zelenka, Assistant Attorney General Lauri J. Soles, Assistant Attorney General S. Creighton Waters, all of Columbia, and Solicitor Holman C. Gossett of Spartanburg, for respondent.

WALLER, Justice:

A jury convicted appellant of murder and first degree burglary. He was sentenced to life in prison on each conviction, to be served consecutively. We affirm the convictions.

## FACTS

Lawrence Warmoth died April 25, 1993, when he was shot three times in the head while lying alone in his own bed. Investigators discovered no murder weapon, no eyewitnesses, and no physical evidence linking appellant to the crime. The key evidence against appellant was the testimony of Nancy P. Smith, appellant's girlfriend at the time and the mother of appellant's young son.

Ms. Smith offered the following testimony: Appellant frequently said he hated Mr. Warmoth, his stepfather, and talked about killing him or having him killed. Appellant borrowed her car and left her apartment at 10:30 p.m. to go to work April 24, 1993. Upon his return a few hours later at 3:30 a.m., appellant told her that he "was taking care of some business, he was finally taking care of his family." Appellant later told her that he expected his mother, Sandra Needs Warmoth, to give him $100,000 in proceeds from his stepfather's life insurance policies to start a business.

Nearly two weeks after the murder, appellant confessed to Ms. Smith that he had killed his stepfather. Appellant described the shooting to her in detail, saying he walked in the house, down the hall, and asked his stepfather for money to go to the store. Appellant told her that his stepfather began to sit up in bed and said "Scott what?" just before appellant shot him three times in the head. Appellant told her that he used "exploding bullets," which police could not trace to him.

An investigator testified he interviewed appellant at his stepfather's house shortly after police were called to the scene. Appellant stated he was with Ms. Smith the night of the murder, except from 11 p.m. to 12:30 a.m. when he went to a fast food restaurant. He did not admit any involvement in the murder.

The State's theory of the case was that appellant killed his stepfather because he hated him and wanted a share of the life

insurance proceeds. The defense's theory was that police did a sloppy investigation, and Ms. Smith implicated appellant because she was angry he planned to marry another woman.

## ISSUES

1. Did the trial judge err in ruling Ms. Smith was competent to testify against appellant?

2. Did the trial judge err in denying appellant's motions to dismiss the charges based on prosecutorial misconduct or, in the alternative, to suppress Ms. Smith's testimony?

3. Did the trial judge err in allowing the State to impeach Ms. Smith under the new South Carolina Rules of Evidence after another judge had refused to qualify her as a court witness under prior case law?

4. Did the trial judge err in admitting evidence of insurance policies on the victim's life?

5. Did the trial judge's circumstantial evidence and reasonable doubt charges shift the burden of proof to defendant in violation of the constitution?

6. Did the trial judge err in denying appellant's motion for a new trial based on after discovered evidence?

### 1. COMPETENCY OF MS. SMITH

■ Ms. Smith initially provided an alibi for appellant, at his urging, by telling police he was with her the night of the murder, except from 11:30 p.m. to 12:30 a.m. Ms. Smith told police about appellant's confession to her in August 1993, four months after the murder. She admitted lying in her initial statement. Ms. Smith changed her statement again in May 1994, giving police a similar statement which implicated appellant, but insisting appellant had couched his entire story in "hypothetical" terms. The State called the case for trial in June 1994.[1] At a pretrial hearing, Ms. Smith recanted her statements about appellant's confession to her and testified appellant was with her when his stepfather was murdered.

---

1. The case did not go to trial until September 1995 because the State appealed the circuit court's refusal to designate Ms. Smith as a court witness, as discussed in Issue 3.

She also produced a diary describing that evening with appellant.

Ms. Smith testified against appellant as described above at the September 1995 trial. On cross examination, she admitted her testimony directly conflicted with the testimony she gave at the June 1994 pretrial hearing. The diary she testified about at the pretrial hearing was a fake, created at appellant's suggestion, Ms. Smith testified. She no longer was scared to testify against appellant because she had remarried, Ms. Smith told jurors. In short, Ms. Smith was first a potential witness for appellant, then a potential witness for the State, then a potential witness for appellant, and—finally—an actual witness for the State at trial.

Appellant contends the trial judge erred in denying his motion to prevent Ms. Smith from testifying because she was not competent under Rule 601(b)(2), SCRE. Her conflicting statements to police and admissions of perjury made her incompetent because she did not understand the duty of a witness to tell the truth. The Court should not uphold a conviction based solely on the testimony of a "pathological liar," appellant asserts. We disagree.

"Every person is competent to be a witness except as otherwise provided by statute or these rules." Rule 601(a), SCRE. Courts presume a witness to be competent because bias or other defects in a witness's testimony—revealed primarily through cross examination—affect a witness's credibility and may be weighed by the factfinder. *See State v. Smith,* 199 S.C. 279, 282, 19 S.E.2d 224, 225 (1942) ("the established practice [is] to allow a rather full and thorough cross-examination of the witnesses for both the State and the defendant in the criminal Courts by way of questions tending to test memory, veracity or credibility"); *accord* Mueller and Kirkpatrick, *Modern Evidence,* § 6.1 (1995); 98 C.J.S. *Witnesses* § 458 (1957).

A witness must have personal knowledge of the matter and must swear or affirm to tell the truth. Rules 602 and 603, SCRE. "A person is disqualified to be a witness if the court determines that ... the proposed witness is incapable of understanding the duty of a witness to tell the truth." Rule

601(b)(2), SCRE.[2] The purpose of Rule 601(b) is to provide a minimum standard for the competency of a witness. Notes to Rule 601, SCRE. Even a convicted perjurer may testify as long as he or she meets the minimum standard. *See State v. Merriman,* 287 S.C. 74, 337 S.E.2d 218 (Ct.App.1985) (explaining the abolition of the prohibition against testimony by a convicted perjurer).

A proposed witness understands the duty to tell the truth when he states that he knows that it is right to tell the truth and wrong to lie, that he will tell the truth if permitted to testify, and that he fears punishment if he does lie, even if that fear is motivated solely by the perjury statute. *State v. Green,* 267 S.C. 599, 606, 230 S.E.2d 618, 621 (1976). As succinctly explained by the Pennsylvania Supreme Court, in order to be competent to testify, a witness must have the ability (1) to perceive the event with a substantial degree of accuracy, (2) remember it, (3) communicate about it intelligibly, and (4) be mindful of the duty to tell the truth under oath. *Commonwealth of Pennsylvania v. Goldblum,* 498 Pa. 455, 447 A.2d 234, 239 (Pa.1982).

The party opposing the witness has the burden of proving a witness is incompetent. *Pennsylvania v. Goldblum, supra.* The determination of a witness's competency to testify is a question for the trial court, and the trial court's decision will not be overturned absent an abuse of discretion. *State v. Camele,* 293 S.C. 302, 360 S.E.2d 307 (1987); *State v. Green, supra.*

In this case, Ms. Smith swore to tell the truth and had personal knowledge of the matter. The trial judge stated he believed, based upon Ms. Smith's *in camera* testimony, that she understood her duty to tell the truth. When questioned by the judge, Ms. Smith stated outside the jury's presence that she understood her duty to tell the truth, and that she would face perjury charges if she lied in court. The trial

---

**2.** Rule 601(b) also requires the proposed witness to be capable of expressing himself to the judge and jury, as was required prior to the adoption of the Rules of Evidence. *See Abbott v. Columbia Mills Co.,* 110 S.C. 298, 96 S.E. 556 (1918); 97 C.J.S. *Witnesses* § 49 (1957). That provision is not at issue in this case.

judge did not abuse his discretion in ruling that Ms. Smith was competent to testify under Rule 601(b)(2), SCRE.

■ After the trial court properly has determined a witness is competent, the resolution of the credibility of the witness is within the province of the jury. *See State v. Patterson*, 324 S.C. 5, 16, 482 S.E.2d 760, 765 ("inquiry as to the weight a juror would give one kind of witness over another invades the jury's province to determine credibility"), *cert. denied*, —— U.S. ——, 118 S.Ct. 146, 139 L.Ed.2d 92 (1997); *State v. Ingram*, 266 S.C. 462, 468, 224 S.E.2d 711, 713 (1976) ("resolution of the credibility of witnesses is within the province of the jury"), *overruled on other grounds, State v. Torrence*, 305 S.C. 45, 406 S.E.2d 315 (1991). "[T]his Court has more than once held that the jury is the judge of which contradictory statement of the witness is the truth." *Soulios v. Mills Novelty Co.*, 198 S.C. 355, 364, 17 S.E.2d 869, 874 (1941).

The prosecutor and appellant questioned Ms. Smith extensively about her conflicting statements. Ms. Smith testified she lied in her initial statement to police; she lied when she modified her August 1993 statement to say appellant had been speaking "hypothetically"; and her testimony at trial directly conflicted with her testimony at the June 1994 pretrial hearing. She told jurors she was testifying truthfully at the trial. While Ms. Smith's credibility conceivably was in shreds, it was for the jury to decide whether to believe her testimony after the trial judge properly ruled she was competent to testify.

## 2. *PROSECUTORIAL MISCONDUCT*

■ After changing her statement several times, Ms. Smith testified as an alibi witness for appellant at a pretrial hearing in June 1994. A grand jury later indicted Ms. Smith on charges of obstruction of justice, accessory after the fact of a felony, and misprision of a felony. Ms. Smith agreed to plead guilty to misprision of a felony, and the State planned to dismiss the other indictments.[3]

---

**3.** The trial judge sentenced Ms. Smith to eighteen months in prison on the charge of misprision of a felony at the end of appellant's trial. Three months later, before Ms. Smith had reported to prison, the judge changed the sentence to ten years in prison, suspended upon the service of ninety days, with five years probation.

Appellant argues the trial judge erred in denying his motion to dismiss the indictments against him due to prosecutorial misconduct. The prosecutor committed misconduct by charging Ms. Smith with crimes after she testified in appellant's favor at the pretrial hearing. Those charges were improper attempts to intimidate Ms. Smith into testifying as a State's witness, appellant contends. We disagree.

Challenges alleging prosecutorial misconduct typically involve a prosecutor's improper efforts to collect evidence or unfair trial tactics. *E.g.*, *State v. Huggins*, 325 S.C. 103, 481 S.E.2d 114 (1997) (prosecutor in closing argument discussed statements that were not in evidence); *State v. Chisolm*, 312 S.C. 235, 439 S.E.2d 850 (1994) (prosecutor improperly and secretly taped telephone conversation with defendant, who had called prosecutor but had an attorney); *State v. Robinson*, 305 S.C. 469, 409 S.E.2d 404 (1991) (prosecutor allegedly used previously suppressed evidence at trial); *State v. Atkins*, 303 S.C. 214, 399 S.E.2d 760 (1990) (prosecutor allegedly obtained confidential medical records in violation of attorney-client privilege); *State v. Pee Dee News Co.*, 286 S.C. 562, 336 S.E.2d 8 (1985) (prosecutor asked improper hypothetical questions at trial); *State v. Craig*, 267 S.C. 262, 227 S.E.2d 306 (1976) (prosecutor's conduct at trial allegedly was calculated to arouse unfair prejudice against defendant). This case is somewhat unusual because appellant challenges the use of one of the most fundamental powers of a prosecutor—the power to bring charges against a person the prosecutor believes has committed a crime.

 "In the ordinary case, so long as the prosecutor has probable cause to believe that the accused committed an offense defined by statute, the decision whether or not to prosecute, and what charge to file or bring before a grand jury, generally rests entirely in his discretion." *United States v. Armstrong*, 517 U.S. 456, 464, 116 S.Ct. 1480, 1486, 134 L.Ed.2d 687, 698 (1996) (quoting *Bordenkircher v. Hayes*, 434 U.S. 357, 364, 98 S.Ct. 663, 668, 54 L.Ed.2d 604, 611 (1978)). A prosecutor's discretion is subject to constitutional constraints. A prosecutor may not, for instance, base the decision to prosecute on unjustifiable standards such as race, religion, or other arbitrary classifications. *Id.; accord United States v. Olvis*, 97 F.3d 739 (4th Cir.1996); 27 C.J.S. *District*

*& Prosecuting Attorneys* § 14(1) (1959); 63C Am.Jur.2d *Prosecuting Attorneys* §§ 20–25 (1997). Nor may a prosecutor lob baseless threats or charges at a potential defense witness in an effort to prevent the witness from testifying. *See State v. Williams,* 326 S.C. 130, 485 S.E.2d 99 (1997) (improper intimidation of witness may violate defendant's due process right to present defense witnesses freely if the intimidation amounts to substantial government interference with witness's free and unhampered choice to testify); Annot., 88 A.L.R.4th 388 (1991) (collecting cases on improper intimidation).

"[T]he South Carolina Constitution[4] and South Carolina case law[5] place the unfettered discretion to prosecute solely in the prosecutor's hands.... Prosecutors may pursue a case to trial, or they may plea bargain it down to a lesser offense, or they may simply decide not to prosecute the offense in its entirety. The Judicial Branch is not empowered to infringe on the exercise of this prosecutorial discretion; however, on occasion, it is necessary to review and interpret the results of the prosecutor's actions." *State v. Thrift,* 312 S.C. 282, 291–92, 440 S.E.2d 341, 346 (1994). Furthermore, a trial court generally has no power to dismiss a properly drawn indictment issued by a properly constituted grand jury before trial unless a statute grants that power to the court. The prosecutor may, of course, request the dismissal of an indictment or charge. *State v. Ridge,* 269 S.C. 61, 236 S.E.2d 401 (1977); *Ex Parte State,* 263 S.C. 363, 210 S.E.2d 600 (1974).

In this case, the evidence showed that Ms. Smith had concealed information and lied to investigators to protect appellant, facts she ultimately admitted at trial. The prosecutor had probable cause to believe Ms. Smith had committed one or more of the indicted crimes, and he did not commit misconduct by pursuing the charges. The trial judge properly rejected appellant's dismissal motion.

In the alternative, appellant argues the trial judge should have suppressed Ms. Smith's testimony because it obviously was not reliable. This argument is another way of asserting

---

4. S.C. Const. art. V, § 24.

5. *State v. Johnson,* 287 S.C. 171, 337 S.E.2d 204 (1985); *State ex rel. McLeod v. Snipes,* 266 S.C. 415, 223 S.E.2d 853 (1976).

Ms. Smith was not competent to testify. As explained in Issue 1, the trial judge properly determined Ms. Smith was competent to testify and her credibility was a question for the jury.

### 3. NEW RULES OF EVIDENCE

■■■ The State called appellant's case for trial in June 1994. The State asked the Honorable John C. Hayes, III, in a pretrial motion to qualify Ms. Smith as a court's witness so that the State could cross examine and impeach her.[6] Judge Hayes denied the State's motion after a hearing because Ms. Smith was not an eyewitness to the crime. The State appealed Judge Hayes' decision because, without Ms. Smith's testimony, the State likely would not survive a directed verdict motion at trial.[7]

The State asked this Court to dismiss the appeal August 9, 1995, saying the recent adoption of the South Carolina Rules of Evidence rendered the appeal moot.[8] The Court dismissed the appeal August 15, 1995. The new Rules of Evidence took

---

6. Under the law then in effect, a party could not impeach the party's own witness unless the court declared the witness to be hostile. A party had to show actual surprise and harm, however, in order to have a witness declared hostile. *See State v. Anderson*, 304 S.C. 551, 406 S.E.2d 152 (1991), *superseded in part by Rules of Evidence as noted in State v. Byram*, 326 S.C. 107, 114 n. 7, 485 S.E.2d 360, 363 n. 7 (1997).

The State knew Ms. Smith intended to recant her statement, which meant the State would be unable to show surprise at trial. The State wanted to qualify Ms. Smith as a court's witness in order to impeach her. To do so, the State had to show (1) the prosecution is unwilling to vouch for the veracity or integrity of the witness, (2) there is a close relationship between the accused and the prospective court's witness, (3) there is evidence that the proposed witness was an eyewitness to the act giving rise to the prosecution, (4) the witness gave a sworn statement concerning the relevant facts which have been or will probably be contradicted, and (5) the absence of the witness' testimony would likely result in a miscarriage of justice. *Riddle v. State*, 314 S.C. 1, 7, 443 S.E.2d 557, 561 (1994).

7. See *State v. McKnight*, 287 S.C. 167, 337 S.E.2d 208 (1985) (the State may immediately appeal a pretrial order granting the suppression of evidence which significantly impairs the prosecution of a criminal case).

8. The State's letter is not in the record of this case, but is contained in the Court's files.

effect September 3, 1995. The State again called appellant's case for trial September 26, 1995.

Appellant asked the trial judge to prohibit Ms. Smith from testifying. He asserted that Judge Hayes had refused to qualify Ms. Smith as a court's witness and prohibited the State from impeaching her testimony. Those rulings were the law of the case because the State had abandoned the appeal, appellant argued. The trial judge denied appellant's motion, concluding the new Rules of Evidence applied to appellant's trial. Under Rule 607, SCRE, "[t]he credibility of a witness may be attacked by any party, including the party calling the witness."

Appellant now argues the trial judge erred in denying his motion. If the State pursued a frivolous appeal of Judge Hayes' order simply to delay matters until the new Rules of Evidence took effect, the Court should not sanction such conduct by awarding the State a "windfall" by its decision.

We find appellant's arguments unconvincing for three reasons. First, courts generally agree that trials occurring before the effective date of new evidence rules are controlled by the rules or case law in effect at the time of trial. New evidence rules usually apply to trials that occur after those rules take effect. *See State v. Byram,* 326 S.C. 107, 114 n. 7, 485 S.E.2d 360, 363 n. 7 (1997) (applying case law in effect at time of defendant's trial, not new Rule 607 on impeachment that took effect later); *State of North Carolina v. McDonald,* 312 N.C. 264, 321 S.E.2d 849, 852 n. 1 (N.C.1984) (same); *Tuer v. McDonald,* 112 Md.App. 121, 684 A.2d 478, 482 n. 2 (Md.Ct.Spec.App.1996) (applying new evidence rules to case tried after new rules took effect), *aff'd,* 347 Md. 507, 701 A.2d 1101 (Md.1997).[9] Nothing in the Rules of Evidence indicates the Court intended to delay application of the rules under these circumstances. The rules took effect about three weeks before appellant stood trial, more than enough time for appellant to receive notice of them. *Cf. State v. Von Dohlen,* 322

**9.** *Accord State of North Carolina v. Riddick,* 316 N.C. 127, 340 S.E.2d 422, 424 n. 1 (N.C.1986); *State of Utah v. Smith,* 726 P.2d 1232, 1236 n. 4 (Utah 1986); *State of New Jersey v. Kately,* 270 N.J.Super. 356, 637 A.2d 214, 216 n. 1 (N.J.Super.Ct.App.Div.1994); *In re Welfare of Bennett,* 24 Wash.App. 398, 600 P.2d 1308, 1311 (Wash.Ct.App.1979).

S.C. 234, 471 S.E.2d 689 (refusing to conduct *in favorem vitae* review in death penalty case where defendant, whose trial began day the Court issued an opinion abolishing such reviews, had notice of that abolition), *cert. denied,* 519 U.S. 972, 117 S.Ct. 402, 136 L.Ed.2d 316 (1996).

Second, Judge Hayes did not rule that the State could not impeach Ms. Smith. He only denied the State's motion to qualify Ms. Smith as a court's witness. Although the effect of that ruling prevented the State from impeaching Ms. Smith under existing case law, that was not the judge's actual ruling. Consequently, there was no impeachment ruling that could become the law of the case. In any event, the State did not impeach Ms. Smith at trial because she freely admitted on direct examination that she initially lied to police and offered directly conflicting testimony at the pretrial hearing.

Third, appellant offers no evidence showing the State pursued a frivolous appeal of Judge Hayes' order to delay the trial until the new rules took effect. Both parties filed their final briefs in November 1994, and the appeal was proceeding in the usual manner when the State asked the Court to dismiss it. In sum, the trial judge properly applied the new Rules of Evidence at appellant's trial.

## 4. LIFE INSURANCE POLICIES

Appellant asked the trial judge to exclude all testimony about insurance policies on his stepfather's life because appellant did not know about the policies and did not stand to derive any benefit from them. He also argued that evidence of the policies would be highly prejudicial. The trial judge initially excluded testimony about the insurance policies, but later reversed his ruling and allowed the testimony under Rule 801(d)(2), SCRE.

Ms. Smith testified appellant told her that his mother, Mrs. Warmoth, "owed a lot of people money." Appellant said killing his stepfather would allow his mother to collect $260,000 from his stepfather's life insurance policies. He also said his mother intended to give him $100,000 of the proceeds to start a business, Ms. Smith testified. Joyce Floyd, the personnel manager at the stepfather's employer, testified the stepfather had a $20,000 policy naming Mrs. Warmoth as the

beneficiary. Carolyn Cooley, personnel manager at Mrs. Warmoth's employer, testified Mrs. Warmoth had an additional $190,000 policy on her husband when he died. That policy also named Mrs. Warmoth as the beneficiary.

Appellant argues the trial judge erred in admitting testimony about the life insurance policies because there was no competent evidence showing appellant stood to derive a benefit from the policies. The jury could have disregarded Ms. Smith's unreliable testimony, but the objective testimony of the personnel managers improperly bolstered Ms. Smith's testimony and "created the illusion of a nexus between appellant and the insurance policies." We disagree.

The State is not required to prove motive in a homicide prosecution. *State v. Damon,* 285 S.C. 125, 328 S.E.2d 628 (1985), *overruled on other grounds, State v. Torrence,* 305 S.C. 45, 406 S.E.2d 315 (1991); *State v. Underwood,* 127 S.C. 1, 120 S.E. 719 (1923). Nevertheless, the State may introduce evidence that a defendant carried an insurance policy on a victim's life, where the policy named the defendant as the beneficiary, to establish motive in a homicide. *State v. Thomas,* 159 S.C. 76, 156 S.E. 169 (1930). The State also may introduce evidence that a defendant carried an insurance policy on the victim's life when there is some showing that the defendant would derive some benefit from the proceeds of the policy. *State v. Hartfield,* 272 S.C. 407, 252 S.E.2d 139 (1979) (evidence of policy on victim's life that named defendant's brother as beneficiary would be admissible if defendant would receive some benefit from the policy); *State v. Vermillion,* 271 S.C. 99, 245 S.E.2d 128 (1978) (upholding admission of evidence that defendant had a policy on life of his father, the victim, which named defendant's wife as beneficiary).

We conclude the trial judge properly admitted Ms. Smith's testimony that appellant told her about the insurance policies and the potential loan from his mother as admissions by a party-opponent. Rule 801(d)(2), SCRE. Since Ms. Smith's testimony was admissible, the judge properly admitted the personnel managers' testimony, which simply established the existence of the policies.

The evidence showed that appellant would have directly benefited from the proceeds of his stepfather's life insurance

through a $100,000 loan from his mother.[10] The trial judge
did not abuse his discretion in admitting evidence of the
insurance policies. *See State v. Tucker,* 319 S.C. 425, 462
S.E.2d 263 (1995) (appellate court will not reverse the trial
judge's decision to admit or exclude evidence unless the trial
judge abused his discretion and petitioner demonstrates preju-
dice); *State v. McElveen,* 280 S.C. 325, 313 S.E.2d 298 (1984)
(same).

## 5. JURY INSTRUCTIONS

In instructing the jury on circumstantial evidence, the
trial judge stated:

> The law also requires ... that to the extent that the State
> relies on circumstantial evidence, the State must prove all of
> the circumstances relied upon beyond a reasonable doubt.
> Circumstances relied upon by the State must be wholly and
> in every particular consistent with each other. And the
> circumstances must point conclusively, that is, beyond a
> reasonable doubt, to the guilt of the accused, to the exclu-
> sion of every other logical or rational conclusion. That is,
> the circumstances must be absolutely inconsistent with any
> other logical or rational conclusion than the guilt of the
> accused.

> Now, ladies and gentlemen, in the consideration of circum-
> stantial evidence, *you, the jury, must seek some other
> rational or logical explanation other than the guilt of the
> accused. And if such logical or rational explanation can
> be found upon consideration of the circumstances, you, the
> jury, cannot convict upon circumstantial evidence....*

> I further instruct you, ladies and gentlemen, the mere fact
> the circumstances are strongly suspicious and the guilt of
> the defendant is probable, it is not sufficient to sustain a
> conviction, because the proof offered by the State must
> exclude every other reasonable or rational or logical conclu-
> sion except the guilt of the defendant, and such proof must

---

**10.** Appellant possibly would have benefited in an indirect way, i.e., the
proceeds would have been available for his mother to pay her debts and
perhaps assist appellant and his siblings. We do not decide whether
such an indirect benefit is sufficient to admit evidence of insurance
proceeds as a motive under *State v. Vermillion, supra.*

satisfy you, the jury, of the defendant's guilt beyond a reasonable doubt.[11]

The judge further instructed the jury that

[a] reasonable doubt is a doubt which makes an honest, sincere, conscientious juror *in search of the truth* in the case hesitate to act. Proof beyond a reasonable doubt must, therefore, be proof of such a convincing character that a reasonable person would not hesitate to rely and to act upon it in the most important of his or her own affairs.

In addition, the judge instructed jurors twenty-six other times throughout his charge that the State had the burden of proving a defendant guilty beyond a reasonable doubt.

Appellant contends the emphasized language in the circumstantial evidence instruction shifted the burden of proof to him by telling jurors they must seek some explanation other than his guilt. He also asserts the "in search of truth" language in the definition of reasonable doubt exacerbated the problem and further shifted the burden of proof to him. Appellant argues the charge is deficient under *State v. Manning*, 305 S.C. 413, 409 S.E.2d 372 (1991), and *State v. Raffaldt*, 318 S.C. 110, 456 S.E.2d 390 (1995).

In *State v. Manning*, the Court granted the defendant a new trial based on a defective charge. The charge was defective because the trial judge (1) defined "reasonable doubt" as synonymous with the term "moral certainty," (2) defined a reasonable doubt as a "doubt which honest people, such as you, when searching for the truth can give a real reason," and (3) required the jury to "seek some reasonable explanation of the circumstances" other than guilt when con-

---

11. The judge at appellant's request substituted the phrase "logical and rational conclusion" for "reasonable hypothesis," the phrase usually used in this charge. Appellant may not on appeal object to the use of the substituted phrase because he asked for that change and the judge agreed. *See State v. Stroman*, 281 S.C. 508, 316 S.E.2d 395 (1984) (party may not complain about an error induced by the party's own conduct); *State v. Epes*, 209 S.C. 246, 39 S.E.2d 769 (1946) (same); Rule 20(b), SCRCrP (stating "[a]ny objection [to jury instructions] shall state distinctly the matter objected to and the grounds for objection. Failure to object in accordance with this rule shall constitute a waiver of objection"). While we do not address the validity of the "logical or rational conclusion" language, we urge trial courts to use the approved charges described below.

sidering circumstantial evidence. The circumstantial evidence instruction "turns the State's burden of proof on its head by requiring the jury find a 'reasonable explanation' of the evidence inconsistent with [a defendant's] guilt before it can find him not guilty." *Id.*, 305 S.C. at 416–17, 409 S.E.2d at 374 (citing *Cage v. Louisiana*, 498 U.S. 39, 111 S.Ct. 328, 112 L.Ed.2d 339 (1990)).

Taken as a whole and considering the three defects, the charge in *Manning* violated the Due Process Clause of the Fourteenth Amendment because a reasonable juror could have interpreted it to allow a finding of guilt based on a degree of proof below the reasonable doubt standard. The Court urged the trial bench to limit its definition of a reasonable doubt to "the kind of doubt that would cause a reasonable person to hesitate to act." *Id.*, 305 S.C. at 417, 409 S.E.2d at 375.

In *State v. Raffaldt, supra,* the Court again found error in a circumstantial evidence charge that required the jury to "seek some reasonable explanation other than the guilt of the accused." However, the defendant failed to demonstrate prejudicial error because the trial judge extensively charged that the State had the burden of proving the defendant guilty beyond a reasonable doubt. The judge also properly defined reasonable doubt as "the kind of doubt which would cause a reasonable person to hesitate to act." *Id.*, 318 S.C. at 115–16, 456 S.E.2d at 393.

The Court since has explained that it was the combination of defective instructions, especially the "moral certainty" and "real reason" language, that prompted it to find a due process violation in *Manning*. *See State v. Whipple*, 324 S.C. 43, 50, 476 S.E.2d 683, 687 (affirming convictions where trial court defined a reasonable doubt as a doubt "for which you could give a reason," and noting trial court never used "moral" or "grave certainty" or "substantial doubt"), *cert. denied*, 519 U.S. 1045, 117 S.Ct. 618, 136 L.Ed.2d 541 (1996); *State v. Hoffman*, 312 S.C. 386, 395, 440 S.E.2d 869, 874 (1994) (affirming convictions where trial court used "seek" language in circumstantial evidence charge because reasonable doubt charge did not contain "moral or grave certainty" or "real reason," and concluding the charge when read as a whole did not shift the burden to defendant); *State v. Johnson*, 306 S.C.

119, 131, 410 S.E.2d 547, 553 (1991) (affirming convictions where trial court did not use "moral certainty" language in conjunction with "substantial" or "grave" doubt in defining reasonable doubt, although those terms also are disfavored); *accord State v. Clute*, 324 S.C. 584, 595, 480 S.E.2d 85, 90 (Ct.App.1996) (affirming conviction where trial court defined a reasonable doubt as a doubt that would cause a reasonable person to hesitate to act and as "a doubt for which a reason can be given" because it did not refer to "moral or grave certainty" or a "real reason"), *cert. denied*, —— U.S. ——, 118 S.Ct. 442, 139 L.Ed.2d 379 (1997); *State v. Kirkpatrick*, 320 S.C. 38, 46, 462 S.E.2d 884, 889 (Ct.App.1995) (affirming conviction where trial court defined a reasonable doubt as "one for which you could give a reason," and noting trial court did not use "moral or grave certainty" or "real reason" in conjunction with erroneous circumstantial evidence charge).

Prior to *Manning*, the Court tacitly approved a reasonable doubt charge containing the language about an honest juror "in search of the truth." *See Singletary v. State*, 281 S.C. 444, 316 S.E.2d 369 (1984). In fact, trial judges have talked about jurors searching for the truth for more than a century. *See State v. Cleland*, 148 S.C. 86, 145 S.E. 628 (1928); *State v. Way*, 38 S.C. 333, 17 S.E. 39 (1893). In *Manning*, the Court pointed to the "in search of the truth" language contained in the reasonable doubt charge as contributing to its defective nature. *Manning*, 305 S.C. at 415, 409 S.E.2d at 374. However, appellate courts since have seemed to allow the use of the phrase—at least when it is not combined with other offending terms outlined in *Manning*. *See State v. Hoffman*, 312 S.C. at 395, 440 S.E.2d at 874; *State v. Kirkpatrick*, 320 S.C. at 46, 462 S.E.2d at 889.

In this case, the trial judge's circumstantial evidence charge was erroneous because it instructed jurors to seek a reasonable explanation other than the guilt of the accused. However, we conclude it was harmless error beyond a reasonable doubt because the trial judge instructed jurors twenty-six other times throughout his charge that the State has the burden of proving a defendant guilty beyond a reasonable doubt. *See State v. Raffaldt, supra; see also State v. Smith*, 315 S.C. 547, 446 S.E.2d 411 (1994) (jury instructions should be considered as a whole, and if as a whole they are free from

error, any isolated portions which may be misleading do not constitute reversible error); *State v. Rabon,* 275 S.C. 459, 272 S.E.2d 634 (1980) (a jury charge which is substantially correct and covers the law does not require reversal). The charge also was harmless error because it did not contain the other troubling language identified in *Manning* and subsequent cases, the phrases "moral certainty," "grave certainty," or "a doubt for which you can give a real reason." *See State v. Whipple, supra; State v. Hoffman, supra; State v. Johnson, supra.*

 We again take this opportunity to strongly urge the trial courts to avoid using any "seek" language, or any of the other offending terms described above, when charging jurors on either reasonable doubt or circumstantial evidence. Such language is unnecessary and runs the risk of unconstitutionally shifting the burden of proof to a defendant. We have identified two appropriate ways to define reasonable doubt [12]

---

12. "A reasonable doubt is the kind of doubt that would cause a reasonable person to hesitate to act." *State v. Manning, supra.*

The trial court also may use the following charge or combine it with the *Manning* charge:

The State has the burden of proving the Defendant guilty beyond a reasonable doubt. Some of you may have served as jurors in civil cases where you were told that [it] is only necessary to prove the fact is more likely true than not, such as by the greater weight or preponderance of the evidence. In criminal cases, the State's proof must be more powerful than that. It must be beyond a reasonable doubt.

Ladies and gentlemen, proof beyond a reasonable doubt is proof that leaves you firmly convinced of the Defendant's guilt. There are very few things in this world that we know with absolute certainty. And in criminal cases, the law does not require proof that overcomes every possible doubt. The law doesn't require that.

If, based on your consideration of the evidence, you are firmly convinced that the Defendant is guilty of the crime charged, you must find him guilty. You must find him guilty. If on the other hand you think there is a real possibility that he is not guilty, you must give him the benefit of the doubt and find him not guilty.

*State v. Darby,* 324 S.C. 114, 477 S.E.2d 710 (1996) (endorsing definition of reasonable doubt developed by the Federal Judicial Center and cited with approval in Justice Ginsberg's concurring opinion in *Victor v. Nebraska,* 511 U.S. 1, 114 S.Ct. 1239, 127 L.Ed.2d 583 (1994)).

Neither charge is mandatory. *State v. Johnson,* 315 S.C. 485, 445 S.E.2d 637 (1994); *State v. Longworth,* 313 S.C. 360, 438 S.E.2d 219 (1993). In fact, it is within a trial judge's discretion to refuse to define

and two appropriate ways to charge circumstantial evidence.[13] Trial courts should rarely find it necessary to deviate from those approved charges.

## 6. AFTER DISCOVERED EVIDENCE [14]

▮ At trial, an investigator testified police received reports that a young boy heard fussing and a gunshot while riding by the victim's house on a bicycle at midday April 25, 1993. Police also received reports about a gray Cadillac and a lowrider motorcycle, neither of which was known to neighbors, passing through the neighborhood late the previous evening.

---

reasonable doubt at all. *State v. Adams*, 322 S.C. 114, 470 S.E.2d 366 (1996).

13. The well established charge is that when the State relies upon circumstantial evidence, a jury may not convict a defendant

unless every circumstance relied upon by the State be proven beyond a reasonable doubt; and all of the circumstances so proven be consistent with each other and taken together, point conclusively to the guilt of the accused to the exclusion of every other reasonable hypothesis. It is not sufficient that they create a probability, though a strong one, and if, assuming them to be true, they may be accounted for upon any reasonable hypothesis which does not include the guilt of the accused, the proof has failed.

*State v. Edwards*, 298 S.C. 272, 379 S.E.2d 888 (1989); *State v. Littlejohn*, 228 S.C. 324, 89 S.E.2d 924 (1955); *State v. Harry*, 321 S.C. 273, 468 S.E.2d 76 (Ct.App.1996).

We recently approved another charge that makes no distinction between direct and circumstantial evidence:

There are two types of evidence which are generally presented during a trial—direct evidence and circumstantial evidence. Direct evidence is the testimony of a person who asserts or claims to have actual knowledge of a fact, such as an eyewitness. Circumstantial evidence is proof of a chain of facts and circumstances indicating the existence of a fact. The law makes absolutely no distinction between the weight or value to be given to either direct or circumstantial evidence. Nor is a greater degree of certainty required of circumstantial evidence than of direct evidence. You should weigh all the evidence in the case. After weighing all the evidence, if you are not convinced of the guilt of the defendant beyond a reasonable doubt, you must find [the defendant] not guilty.

*State v. Grippon*, 327 S.C. 79, 83–84, 489 S.E.2d 462, 464 (1997).

14. After appellant appealed, this Court remanded the case in June 1996 at appellant's request for a hearing to consider his motion for a new trial based upon after discovered evidence.

Appellant argued in closing that police failed to investigate thoroughly those leads and others.

The Jennings family lived about 100 yards from the victim's house, which could be seen from the Jennings' residence. At the new trial hearing, appellant's lawyer submitted an affidavit stating that Mrs. Jennings told him before the trial that no one in her family knew anything about the murder. A private investigator hired by appellant testified she and fellow investigators diligently canvassed the victim's neighborhood in 1994, searching for the boy mentioned in the police report as a potential witness to the murder.

Mary Kay Needs, appellant's wife, testified she visited the Jennings family in March 1996. She secretly taped a conversation in which the young boys, nine-year-old Steven and ten-year-old Michael, purportedly described hearing a gunshot and seeing a man run from the victim's house. A friend who was with Mrs. Needs offered similar testimony about the conversation with the Jennings boys.

Steven Jennings, who was six when the murder occurred, testified at the hearing he told Mrs. Needs that he saw a tall, white male with black hair and wearing black clothes outside the victim's house at about 6 p.m. on April 25, 1993. He testified he did not know whether he heard a gunshot. Michael Jennings, who was seven when the murder occurred, offered a similar description of the man. He testified he did not hear a gunshot. James M. Jennings, the boys' father, testified he was not sure whether his boys told Mrs. Needs they heard a gunshot and saw someone running from the victim's house that day.

The trial judge denied the motion for a new trial based on after discovered evidence. Appellant argues the judge erred because the boys' testimony was clearly material to the issue of guilt. Appellant diligently tried to locate the boys before trial, but could not. "With the State's entire case revolving around an admitted perjurer who changed her story five times, it is reasonable to think [the boys'] testimony would probably have changed the result of the trial," appellant contends. We disagree.

To prevail on a motion for a new trial based on after discovered evidence, a defendant must show (1) the

evidence is such as will probably change the result if a new trial is granted; (2) the evidence has been discovered since the trial; (3) the evidence could not have been discovered prior to trial by the exercise of due diligence; (4) the evidence is material; and (5) the evidence is not merely cumulative or impeaching. *State v. Prince,* 316 S.C. 57, 447 S.E.2d 177 (1993); *State v. Irvin,* 270 S.C. 539, 243 S.E.2d 195 (1978). The granting of such a motion is not favored and, absent error of law or abuse of discretion, an appellate court will not disturb the trial judge's denial of the motion. *State v. Irvin, supra; State v. Freeman,* 319 S.C. 110, 459 S.E.2d 867 (Ct. App.1995).

We conclude appellant has not met his burden. It is true the State's case against appellant was not overwhelming, especially since the State's key witness had offered so many contradictory statements. But we do not believe the evidence appellant would present at a new trial would change the outcome of the trial.

Furthermore, appellant knew about reports the police had received about a possible young witness, the Cadillac, and the lowrider motorcycle before the trial. It is unclear why appellant's private investigators, in the exercise of due diligence, did not insist on speaking directly to the boys instead of just their mother before the trial. Finally, given the boys' lack of testimony at the post-trial hearing about a gunshot or a man running from the victim's house, the evidence appellant would offer is merely cumulative. Appellant would have little or no more evidence to argue to the jury than he did in the first trial.

## CONCLUSION

We dispose of appellant's remaining issues pursuant to Rule 220(b)(1), SCACR, and the following authorities: Issue 4: *State v. Conyers,* 326 S.C. 263, 487 S.E.2d 181 (1997) (argument is not preserved for appeal when appellant failed to assert it at trial); *State v. Meyers,* 262 S.C. 222, 203 S.E.2d 678 (1974) (same); Issue 2: *State v. Robinson,* 310 S.C. 535, 426 S.E.2d 317 (1992) (in considering motion for directed verdict, judge is concerned with existence or non-existence of evidence, not with its weight; judge should submit case to

jury if there is any substantial evidence which reasonably tends to prove the guilt of the accused, or from which his guilt may be fairly or logically deduced); *State v. Rowell*, 326 S.C. 313, 487 S.E.2d 185 (in reviewing denial of directed verdict motion, appellate court must review the evidence in the light most favorable to the State; if there is any direct evidence or any substantial circumstantial evidence reasonably tending to prove the guilt of the accused, an appellate court must find that the case was properly submitted to the jury), *cert. denied*, —— U.S. ——, 118 S.Ct. 319, 139 L.Ed.2d 246 (1997).

For the reasons outlined above, appellant's convictions are AFFIRMED.

FINNEY, C.J., TOAL, MOORE and BURNETT, JJ., concur.